## PURCELL'S ADM'R *vs.* MATHER.

[GARNISHMENT ON JUDGMENT—CONTEST WITH TRANSFERREE.]

1. *Mortgage of future accounts.*—A mortgage, by which a blacksmith transfers an account to be created in future by one of his regular customers, who was no party to the contract, and under no obligation to have his work done by the mortgagor, is, at most, a mere executory agreement, and does not convey to the mortgagee such title or interest in the account, when created, as will enable him successfully to contest the right of an attaching creditor of the mortgagor.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. NAT. COOK.

THE appellant in this case, as the administrator of William H. Purcell, deceased, having obtained a judgment against James E. Leslie, at the spring term, 1857, of the said circuit court of Lowndes, afterwards sued out process of garnishment thereon, and summoned James G. Gilchrist as the debtor of said Leslie. The garnishee answered, admitting an indebtedness to Leslie, by open account, for blacksmith-work done for him by the latter during the year 1858, due the 1st January, 1859; and stating that, prior to the service of the garnishment, he had been notified by one Thaddeus Mather that said account had been transferred to him. Mather was thereupon summoned to contest with the plaintiff his right to the debt, and a trial was had between them; a formal issue being dispensed with by agreement. "The contestant introduced evidence, showing that he hired a negro man to said Leslie, at the last of the year 1857, to work in his blacksmith-shop during the year 1858; and, at the same time, said Leslie executed to him a mortgage, in the words and figures following:"

"State of Alabama, ⎫ Know all men by these presents,
Lowndes county. ⎭ that whereas I have hired of T. Mather, State and county aforesaid, a negro man Peter, a blacksmith, to work in my shop in Hayneville for the year 1858, for which I agree to pay the sum of twenty-

five dollars per month, due and payable the 1st January, 1859 : Now, for the purpose of securing to the said Mather the amount due him for the hire of said boy, I do hereby transfer and mortgage to the said Mather, his heirs, assigns, or administrators, the following claims or accounts, to be made on my books for work done in my shop in the year 1858, as follows : James G. Gilchrist, James Meadows, Benjamin S. Meadows, F. J. Smith, and G. C. Freeman. If they exceed the amount for hire of said boy Peter, said Mather is to refund all over. Said Mather is to have the privilege of taking said boy with him to Texas, after 1st November, 1858."

" The contestant proved, that the debt to which the garnishee answered was one of the accounts mentioned in the mortgage ; that said Leslie then was, and for some years before that time had been, a blacksmith, and kept up a blacksmith-shop in Hayneville, near where the garnishee resided ; that the garnishee, prior to the execution of the mortgage, had been one of the regular customers at Leslie's shop, and both he and Leslie contemplated and expected, at the time the mortgage was given, that he would continue to have his work done at said shop during the year 1858; that the work was in fact so done, and the debt admitted by the garnishee was for the work so done; but no part of said account was in existence when the mortgage was executed. It was admitted, that the mortgage was on good consideration; that Leslie worked the said negro boy in his shop during the year 1858 ; and that there was no binding contract or other agreement by the garnishee that he would have his work done at Leslie's shop during the year 1858. The mortgage was offered in evidence, in connection with this proof, its execution being admitted. The plaintiff objected to its admission as evidence, and excepted to the ruling of the court in permitting it to go in evidence.

" The plaintiff asked the court to charge the jury, in writing, ' that said mortgage did not convey the account of said Gilchrist to the contestant, and was invalid to convey said account or debt to him, because the account was not in existence, nor founded upon any right in Leslie,

at the time said mortgage was executed.' The court refused to give this charge, and instructed the jury, ' that the fact that an account is not in existence, at the time a mortgage transferring it is made,is not sufficient to render the mortgage invalid.' The plaintiff excepted, both to the refusal of the charge asked, and to the charge given by the court."

The rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

CLEMENTS & WILLIAMSON, for the appellant.—The only question in the case is as to the validity of the mortgage. It was shown that, when the mortgage was executed, the account was not in existence; that Gilchrist was under no contract or obligation to give his work to Leslie, nor had the latter any right to demand the work of Gilchrist. The thing transferred had no potential existence, and was not founded on any right *in esse :* it was a bare hope, or expectancy, and could not be made the subject of a valid transfer.—Shep. Touch. 431; 2 Kent's Com. (4th ed.) 468, note *b ;* 1 P. Wms. 663; 3 *ib.* 414; Jones v. Roe, 3 Durn. & East, 88; 5 M. & S. 236; Bell v. Hogan, 1 Stewart, 542; Robinson & Terrell v. Mauldin, Montague & Co., 11 Ala. 977; Stewart v. Kirkland, 19 Ala. 162; 1 Gray, 105.

BAINE & NeSMITH; *contra.*—A mortgage of property or debts not owned by the mortgagor at the time, but the future acquisition of which by him was then contemplated, though not valid to pass the legal title, is a valid conveyance of an equitable title, which enures to the mortgagee so soon as the property or debts come into existence. Langton v. Horton, 1 Hare, 556; Douglass v. Russell, 4 Sim. 524; Curtis v. Auber, 1 Walker, 511; 8 Price, 256–81; Floyd v. Morrow, 26 Ala. 353; Mitchell v. Winslow, 6 Law Reporter, 8, No. 350, referred to in Robinson v. Mauldin, 11 Ala. 980. If the mortgagee took an equitable interest in the debt in controversy, he is the "party really interested," and may successfully assert his title in a court of law.—Code, § 2129; Leonard v. Storrs, 31 Ala. 488.

STONE, J.—It is not important in this case that we should consider whether Mr. Mather can maintain a suit on his contract with Mr. Leslie, by which the latter undertook to mortgage the accounts of Mr. Gilchrist and others to the former. That is not the question presented by this record. The question for our consideration is, did the mortgage transfer *the ownership* in the accounts to Mr. Mather? Was it a mere executory agreement to sell, or a contract of sale? If the ownership passed to Mr. Mather, then he became "the party really interested," and could, without more, maintain an action on the account in his own name. When the writing was executed, the account of Mr. Gilchrist had no existence; and it could not be known, or certainly expected, that such account would ever be created.

In speaking of this subject, Chancellor Kent said: "The thing sold must have an actual or potential existence, and be specific or identified, and capable of delivery; otherwise, it is not strictly a contract of sale, but a special, or executory agreement."—2 Kent's Com. (8th ed.) 604, side page 468. In a note it is said, "a single hope or expectation of means, founded on a right *in esse,* may be the subject of sale; as the next cast of a fisherman's net," &c. "But a mere possibility or expectancy, not coupled with any interest in, or growing out of property, as a grant of the wool of the sheep the grantor may thereafter buy, or the expectancy of an heir apparent, is void as a sale." These principles are sustained by the authorities, and were quoted with apparent approbation in the case of Robinson v. Mauldin, 11 Ala. 977. See, also, Ravisies v. Alston, 5 Ala. 297; Adams v. Turner, *ib.* 740; Floyd v. Morrow, 26 Ala. 353; 2 Hilliard on Mortgages, 836; Congreve v. Evetts, 26 Law & Eq. 493; Hope v. Hayley, 34 Law & Eq. 189; Stewart v. Kirkland, 19 Ala. 162.

We think the doctrine stated above is decisive of this case. The account had no actual existence, nor did it, as we understand the term, have a potential existence. It was a bare possibility. There was no right *in esse,* out of which the claim could spring. It was not the transfer of the products of the grantor's labor. Whether he would

perform labor for Mr. Gilchrist, was contingent on the election of Mr. Gilchrist, who, as far so we are informed, was not a party to the contract. This case must stand on the same principle, as a sale of an expectancy by an heir apparent. It was, at most, an executory agreement.

We need not, and do not, announce what would be our decision, if Mr. Gilchrist had been a party to the agreement.

Reversed and remanded.