**Lawler B. GODWIN, Plaintiff,**

v.

**Will E. ORGAIN, B. D. Orgain, John C. Orgain, C. E. Broussard and J. E. Broussard, Jr., As Acting Trustees of The Broussard Trust, The Broussard Trust, McAlester Fuel Company, a corporation, W. L. Goldston, W. J. Goldston, John F. Magale, and the Estate of L. A. Gralling, Respondents.**

**Civ. A. No. 1842.**

United States District Court
S. D. Alabama, S. D.
April 10, 1958.

Grady W. Hurst, Jr., Chatom, Ala., for plaintiff.

R. P. Denniston of Hamilton, Denniston, Butler & Riddick, Mobile, Ala., John G. Tucker of Orgain, Bell & Tucker, Beaumont, Tex., for respondents.

DANIEL HOLCOMBE THOMAS, District Judge.

This was originally a bill in equity filed on May 31, 1957, in the Circuit Court of Washington County, Alabama, to cancel an oil, gas and mineral deed, or in the alternative to reform same so as to constitute it as a royalty deed only,

and also to cancel an oil, gas and mineral lease executed by the grantee in said deed and his assigns to other defendants in the case. The case was duly removed by the defendants to this Court. The cause came on for hearing before the Court without the aid of a jury, and the Court having heard the evidence and the argument of counsel, and being fully advised in the premises, now finds the following:

## Findings of Fact

1.

Plaintiff is a resident citizen of the State of Alabama, the defendants are each and all residents and citizens of a State other than Alabama, and the amount in controversy is in excess of $3,000, exclusive of interest and costs.

2.

On June 30, 1947, plaintiff was and had for some time been the owner of the N½ of NW¼ of NE¼ of Section 12, Township 5, North, Range 3 West, Washington County, Alabama, subject to an existing oil, gas and mineral lease.

3.

On or about June 17, 1947, defendant Will E. Orgain, an attorney and resident of Beaumont, Texas, employed Mr. Wallace E. Pruitt, an attorney of Chatom, Alabama, to purchase for the account of Orgain on a commission basis certain mineral interests if available in the general area of plaintiff's land. Pruitt had two contacts with the plaintiff and his wife at their home shortly before June 30, 1947, and on that date they visited his office in his home and executed the deed which is the subject of this litigation, a copy of which is marked Exhibit "A" and made a part of the plaintiff's petition. The document was acknowledged by the Godwins before Pruitt as a Notary Public on June 30, 1947, and payment was made by a draft for $480 drawn by Pruitt on defendant Will E. Orgain, which draft was endorsed by the plaintiff and was deposited with the deed attached on July 1, 1947, to the credit of plaintiff in the Chatom State Bank. The draft was ac-cepted and paid by defendant Will E. Orgain at Beaumont, Texas, on about July 3, 1947, and the deed was recorded in the Probate Court of Washington County shortly thereafter.

4.

Although the Godwins alleged in their petition and also testified that defendant Will E. Orgain was with Pruitt on the occasion of each visit and at the time the document was executed, and that he participated personally in the negotiations and closing of trade, defendant Will E. Orgain established by abundant evidence and the Court finds that he left the environs of Chatom on about June 19 or June 20, 1947, and did not participate in person in any of the negotiations or the closing of the trade. At the conclusion of the trial the plaintiff was permitted to amend his petition to add an alternative allegation that Pruitt alone, acting as agent for defendant, Will E. Orgain, handled the negotiations and the closing and made the representations complained of in the petition.

5.

The plaintiff and his wife both testified variously that Pruitt or Will E. Orgain, or both, represented during the negotiations and at the time of execution of the document that the deed would not affect the plaintiff's right to make future leases, or the amount of bonus or rentals received on future leases, and that the grantee, Will E. Orgain, would receive nothing under any future lease unless oil, gas or minerals were produced, and testified further that they relied upon these representations. Defendant, Will E. Orgain, and Pruitt both denied making any such representations and Pruitt testified that the correct legal effect of the deed was explained to the Godwins before execution and that he was satisfied at that time that they understood the document as written. The Court's finding of fact on this subject will be set forth hereinafter.

6.

The deed, which was first recorded in Book 80, Pages 549–550 of the Deed Records of Washington County, is clearly

a mineral conveyance. The document by its terms conveyed an undivided one-half interest in and to the oil, gas and other minerals in and under and that may be produced from the lands above described, to the defendant, Will E. Orgain, for a term of 15 years from its date, and contains the following paragraph:

"It is understood between the parties hereto that this sale is made subject to any valid and duly recorded oil and gas lease, but covers and includes one-half of all the oil royalties and gas royalties and mineral royalties due and to become due under the terms of any such lease provided that should any such lease expire or be cancelled or otherwise become inoperative and of no effect, the rights acquired hereunder by grantee shall be and remain in full force and effect. And that this sale includes no part of the delay rental on the present oil lease on the above described property."

**7.**

During the month of August, 1947, defendant, Will E. Orgain, noticed that in the term and reversionary paragraph of the deed the word "and" had been inadvertently used instead of the word "or", and upon his request by letter to Pruitt the latter presented the Godwins with the deed with the request that the word "and" be corrected to "or" and the correction initialed. On August 23, 1947, this was done by plaintiff and the deed again acknowledged, and on August 28, 1947, it was again recorded.

**8.**

Between August and October of 1947 (by virtue of the two recordings of the above mentioned instrument) the Godwins were told by some representative of the Humble Oil & Refining Company that the plaintiff had conveyed everything he owned to Will E. Orgain, land, buildings and livestock. On October 25, 1947, Dennis Porter of the law firm of Scott & Porter, of Chatom, Alabama (whose office records have subsequently been destroyed by fire), who has no personal, independent recollection of the matter, wrote defendant, Will E. Orgain, referring to his purchase from the plaintiff of "an undivided one-half interest in oil, gas and other minerals," describing the land, and advising Orgain that the double recording did not indicate that the second recording was a correction of the original document first recorded. Porter stated in his letter that "Mr. Godwin is anxious to get this matter cleared up at the earliest possible date." Defendant, Will E. Orgain, together with his wife, executed and returned to Porter by mail an instrument of clarification which released and quitclaimed to the plaintiff "all right, title and interest which we have in and to said above described oil, gas and other minerals in excess of the undivided one-half of the oil, gas and other minerals in and under said property as was conveyed by said deed of date the 30th day of June, 1947, as corrected and recorded in Vol. 82 Page 42 in the Office of the Judge of Probate of Washington County, Alabama." A copy of this document was made Exhibit "B" to plaintiff's petition. Plaintiff and his wife executed an acceptance at the bottom of this instrument and acknowledged same before said Dennis Porter, as a Notary Public, and the document was recorded in the Probate Court of said County on November 4, 1947.

**9.**

Some time after the execution and delivery of the documents hereinabove described, a well was drilled in the general area of plaintiff's land in search for oil or gas, without success. In about the year 1950 plaintiff and wife executed an oil, gas and mineral lease purporting to cover the full 80 mineral acres to the Humble Oil & Refining Company, which lease was dropped after one year. The evidence does not reveal what search of the records, if any, was made by Humble or why the lease was dropped.

**10.**

In the Summer of 1955 oil was discovered at Citronelle, Alabama, at a depth

considerably below that at which prior wells had been drilled, and the value of the minerals in the general area of those herein involved, and of plaintiff's property, increased substantially.

### 11.

In September of 1955 plaintiff filed a notice of lis pendens in the Probate Court of Washington County, claiming that defendant, Will E. Orgain, had bargained for an undivided one-half royalty interest and had fraudulently secured plaintiff's signature to a mineral deed. No suit was filed by plaintiff until this suit was filed on May 31, 1957.

### 12.

Some time after the purchase of the interest under consideration, defendant Will E. Orgain conveyed various interests to defendants C. E. Broussard and J. E. Broussard, Jr., acting Trustees of the Broussard Trust, B. D. Orgain and John C. Orgain. He and these named defendants under date of March 28, 1956, executed to M. C. Jones for a valuable consideration an oil, gas and mineral lease of the interest owned by them, which lease was subsequently assigned to defendant McAlester Fuel Company and defendants W. J. Goldston, John F. Magale, The Citizens First National Bank of Tyler, as Executor of the Estate of L. A. Gralling, and Iris Goldston and W. J. Goldston, as Executors of the Estate of W. L. Goldston, deceased, by mesne conveyances, the said lease and assignments being duly recorded.

### 13.

Considerable evidence was introduced concerning other purchases made by Pruitt for defendant Will E. Orgain in the vicinity of plaintiff's land shortly after the purchase from the plaintiff. The most pertinent of these was a trade early in July, 1947, with Hon. Joe M. Pelham, Jr., State Circuit Judge of the 1st Judicial Circuit of Alabama, which was admittedly handled entirely by Pruitt. Judge Pelham's testimony was confined largely to the statement that if he had been asked to sell his minerals or to execute a mineral deed there would have been no sale and he testified that he had little recollection of the details of the transaction. Pruitt testified that the early negotiation was on the basis of a sale of minerals. Pruitt left the proposed form of deed with Judge Pelham before time of closing the trade, the document being clearly in the form of a mineral conveyance. He waited for several hours in the Judge's office while the latter was trying to locate his title documents. Before the document was executed Judge Pelham read it over and insisted on changing the language to conform to a royalty conveyance, which was done before the document was executed, and draft handed him by Pruitt. Pruitt wrote to defendant, Will E. Orgain, that day or the next describing the trade, and acknowledged that said defendant had authorized purchase only of a mineral interest but that Judge Pelham was unwilling to convey a mineral interest and Pruitt advised said defendant Orgain in the letter to refuse the deed and the draft when presented if he so chose. On presentation, however, defendant Will E. Orgain not only accepted and paid the draft and accepted the deed, but also initiated corrections to improve the language in order to clarify it as being truly a royalty deed.

### 14.

In 1947 the plaintiff knew that he had sold *some interest affecting his oil, gas and minerals* for $480, that what he sold constituted one-half of the interest which was involved in the sale and that he was retaining the other half. He knew that he had not sold the land itself. The type of impediment or limitation on the rights which he retained was not of great concern to the plaintiff at that time. In 1947 the plaintiff had four separate and distinct opportunities to inform himself of the meaning of the deed under consideration: first, at the time of execution; second, when the word "and" was changed to "or"; third, when the oil company representative told him that he had deeded away "everything"; and fourth, when Mr. Dennis Porter, the

attorney, handled the release from defendant Will E. Orgain and wife and the acceptance on the part of the plaintiff and his wife, in order to cure the effect of double recording. Since that time the values have changed materially, records have been lost or discarded and the recollections of witnesses have faded.

### 15.

The Court does not find that any fraud or misrepresentation was practiced upon the plaintiff by the defendant, Will E. Orgain, or by his agent or by any of the other defendants or their agents.

### Conclusions of Law

### 1.

The Court has jurisdiction of parties and subject matter.

### 2.

 Equity may reform a contract or conveyance so as to make it conform to the intention of the parties, if its execution was the result of the mistake of one of the parties and fraud on the part of the other party.[1]

### 3.

None of the defendants nor any authorized agent of defendants were guilty of any fraudulent conduct in connection with the sale and purchase of said minerals as conveyed by the deed dated June 30, 1947.

### 4.

Where a legal instrument speaks the true agreement between the parties, equity will not reform it because one or both of them may have mistaken its legal consequences.[2]

### 5.

In the execution of the deed dated June 30, 1947, there was no mutual mistake except as to the use of the word "and" instead of the word "or" in said deed, which is not the basis of any claim by the plaintiff herein.

### 6.

This entire case constitutes a perfect example of the proper working of the doctrine of Laches, as above demonstrated in the latter part of the Findings of Fact number 14.

### 7.

The plaintiff has failed to establish by clear and convincing evidence that he is entitled to the relief prayed for.[3]

### 8.

The plaintiff is not entitled to recover herein, and all of the defendants are entitled to a judgment.

### 9.

An order in accord herewith is this date entered, April 10, 1958.

1. Holmes v. Riley, 240 Ala. 96, 196 So. 888.   Adams v. Woods, 263 Ala. 381, 82 So.2d 531.

2. McGregor v. McGregor, 254 Ala. 378, 48 So.2d 312.

3. McGregor v. McGregor, supra.